# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMIE GILBREATH, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-14-265-JHP-SPS |

## REPORT AND RECOMMENDATION

The claimant Jamie Gilbreath requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born July 30, 1976, and was thirty-six years old at the time of the administrative hearing (Tr. 36). She completed the eighth grade and later earned her GED, and has no past relevant work (Tr. 24, 49, 185). The claimant alleges that she has been unable to work since the protected filing date of June 9, 2011, due to post-traumatic stress disorder (PTSD), manic depressive, anxiety attacks, paranoid schizophrenia, anti-social disorder, chronic obstructive pulmonary disease (COPD), and migraines (Tr. 184).

**Procedural History**

On June 9, 2011, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Larry D. Shepherd conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 24, 2013 (Tr. 16-25). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a limited range of light work, *i. e.*, she could lift/carry twenty pounds occasionally and ten pounds frequently; stand/ walk for six hours in an eight-hour workday; sit for 6 hours in an eight-hour workday; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and

crawl; but could not climb ropes, ladders, and scaffolds. Additionally, she was to avoid concentrated exposure to dusts, fumes, gases, odors, and poor ventilation. Finally, he indicated that the claimant was able to understand, remember, and carry out simple, routine, and repetitive tasks; could respond appropriately to supervisors, co-workers, and usual work situations; but could have no contact with the general public (Tr. 20). The ALJ then concluded that although the claimant had no past relevant work to return to, she was nevertheless not disabled because there was work she could perform, *e. g.*, small parts assembler, motel cleaner, and laundry folder (Tr. 25).

## Review

The claimant argues that the ALJ erred by: (i) failing to properly account for her mental impairments in her RFC, and (ii) failing to identify jobs that accommodate her need to avoid exposure to irritants related to her COPD. The undersigned Magistrate Judge finds that the ALJ *did fail* to properly consider the claimant's mental impairments, and the decision of the Commissioner should therefore be reversed.

The ALJ found that the claimant had the severe impairments of COPD, obesity, PTSD, and major depressive disorder (Tr. 18). The claimant was previously found disabled and awarded benefits from 1999 through July 2010, but they were discontinued when she went to prison in 2010; she reapplied for benefits upon her release in June 2011 (Tr. 21). In 2006 (while she was previously receiving benefits), the claimant was admitted to a hospital in Norman, Oklahoma, for suicidal ideation, and was discharged six days later. She was assessed with a methamphetamine induced mood disorder; personality traits, not otherwise specified; GERD; and given a global assessment of

functioning score of 55 (Tr. 239). Records from the Oklahoma Department of Corrections indicate that the claimant was diagnosed with bilateral carpal tunnel syndrome while incarcerated, and was also prescribed medication and an inhaler for her asthma (Tr. 258-290).

On August 24, 2011, Dr. Haisam Al-Khouri, MD, conducted a psychiatric evaluation of the claimant (Tr. 303). He noted no homicidal or suicidal ideation, intact abstract reasoning, impaired judgment, an estimated IQ of 80 or higher, and assessed her with major depression, recurrent, moderate, without suicidality or psychotic features (Tr. 304). As to Axis IV, he stated, " moderate to severe secondary to psychosocial as well as environmental stressors," then assessed her on Axis V with a GAF of 85 (Tr. 304). He believed she was forthright in her answers, and that she would likely improve in the next year (Tr. 304). The following month, state reviewing physician Diana Hyde, Ph.D., found the claimant had moderate degrees of limitation in all three areas of functional limitation, and noted one or two episodes of decompensation (Tr. 327). Dr. Hyde also completed a mental RFC assessment, indicating that the claimant was markedly limited in the ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public (Tr. 321-322). She then stated that the claimant could perform simple tasks with routine supervision, could relate to supervisors and peers on a superficial work basis, and could not relate to the general public, but could adapt to a work situation (Tr. 323).

In July 2011, the claimant went to Good Shepherd Community Clinic with complaints of acid reflux and depression, and the notes indicate the claimant was "having

some trouble w/ mental health," and had been experiencing paranoia since her release from incarceration (Tr. 328). She was eventually referred to Mental Health Services of Southern Oklahoma, and began receiving counseling and medication management. At the intake exam on December 13, 2011, the claimant was assessed with major depressive disorder, recurrent episode – severe; PTSD; and Amphetamine and other psychostimulant dependence – in remission; rule-out bipolar disorder (Tr. 335, 351).[2] Her family history included sexual, physical, and emotional abuse directed toward her when she was a child, inpatient medical/mental health treatment from ages 10 through 13, beginning prostitution at age 14 and became a runaway with her pimp as her guardian, and returning to live with her mother at age 22, upon release from prison (Tr. 330). She also reported trouble being around a lot of people even if they were just family members, and needing her mother to help her complete tasks (Tr. 331). The claimant was given a fair prognosis upon intake due to difficulty with transportation, and the provider noted the claimant displayed a congruent mood and adequate hygiene but reported depression and anxiety, as well as anger easily triggered by things and people and a past history of homicidal and suicidal ideation (Tr. 337). The claimant also reported problems with impulsivity, including sexual behavior and past drug use, and that her basic needs were all being met by her mother (Tr. 337). The claimant was again assessed on December 22, given the same diagnoses, and assessed a GAF of 49 (Tr. 339). She reported having problems with her mental health for most of her life, and that she was on probation for kidnapping and

---

[2] The record reflects that in the place for a assigning a GAF score, the claimant was assessed a "1." (Tr. 335). This appears to be in error as she was noted as having no suicidal/homicidal ideation and she was assessed a GAF of 49 nine days later (Tr. 337, 339).

assault with a deadly weapon, and had past charges of assault with a deadly weapon, assault and battery of a police officer, and arson (Tr. 341). Medication management notes indicate that the claimant experienced depression and paranoia when not on her medications, and four previous suicide attempts (three as an adult), including burning large portions of her body in the most recent attempt in 2006 (Tr. 363). The claimant then reported having no depression and getting sleep on her medications, and that she had a day of paranoia and audiovisual hallucinations after breaking up with a significant other, but doing better after that (Tr. 357, 360). Upon reassessment on June 26, 2012, the claimant was assessed a GAF of 51, highest level of 48 in the past year, along with the same diagnoses and need for treatment of depression, anxiety, and psychosis (Tr. 367).

At the administrative hearing, the claimant's representative requested a second mental consultative examination, arguing that Dr. Al-Khouri's opinion was inconsistent with the entirely of the file and that longitudinal evidence indicated frequent periods of decompensation (Tr. 34). The claimant then testified that she had been off her schizophrenia medication for a number of months (Tr. 38). She testified that she went to prison in 1994 for assault with a deadly weapon, first degree grand arson (for setting a county jail on fire), and assault and battery of a police officer (Tr. 39). As to her mental health problems, she testified that many people believe she has an anger problem, and that she will "go off" on her mother daily (Tr. 48). She stated that she believes she is being filmed all the time, and that voices in her head have told her to harm herself in the past (Tr. 50-51). As to relating to other people, she testified that when people are rude to her, she takes it a step further, and also indicated that she did not think it was a big deal to

lock a girl in a trunk because she deserved it (Tr. 55-56). She says that she gets along with her parents and sister, but avoids large gatherings of people, including her family, even at the holidays (Tr. 57). She described herself as attempting one job at a pet store, which she quit because she knew they would fire her due to "the yelling and screaming and cussing," and that she had problems getting along with her co-workers (Tr. 57). The claimant began crying during the testimony and took a brief recess, then explained that testifying at the hearing was being out in public "a very long time" for her, and the ALJ excused her prior to the vocational expert's testimony (Tr. 66-69).

In his written opinion, the ALJ summarized the claimant's testimony and summarized much of the medical evidence (Tr. 18-24). As to her mental health treatment, he summarized: (i) her 2006 hospitalization; (ii) Dr. Al-Khouri's consultative exam, including his assessed GAF of 85; and (iii) her mental health treatment notes from MHSSO, *including* her reports of doing well on her medication but *excluding* the assessed GAF scores and prognosis (Tr. 22-23). As to the claimant's RFC, the ALJ discounted the claimant's reports of schizophrenia as related to past drug use, and noted her reports of doing well on her medications (Tr. 23). He then found her not credible because she alternately reported having two friends and having no friends, and because she had a prior criminal history (Tr. 23). Based on the credibility analysis, he then limited her to simple tasks and no public contact (Tr. 23). He noted two Third Party Function Reports, but gave them no significant consideration or weight because he had already determined the claimant was limited but not disabled (Tr. 23). He then gave

great weight to Dr. Hyde's opinion that she could perform simple jobs tasks with no contact with the public, concluding that she was therefore not disabled (Tr. 24).

Although the ALJ found that the claimant's PTSD and major depressive disorder were severe impairments, he failed to include any limitations related to either in the claimant's RFC (Tr. 12-22). *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.") [unpublished opinion]; *see also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion]. Indeed, the ALJ devoted much of his discussion at step four to questioning his determination at step two, *i. e.*, the severity of these impairments, and further finding her not credible because of inconsistent statements related to drug use, and her admissions of prior criminal history. *See McCleave v. Colvin*, 2013 WL 4840477, at *6 n.6 (W.D. Okla. Sept. 10, 2013) ("Additionally, the ALJ found Plaintiff's subjective complaints not credible in part because of evidence of her noncompliance with prescribed psychotropic medications. However, the ALJ did not consider whether Plaintiff had an acceptable reason for failing to follow her prescribed treatment, *which could include her bipolar disorder*.") [emphasis added], *citing* 20 C.F.R. §§ 404.1530(c), 416.930(c) *and Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011) ("ALJ's assessing claimants with bipolar disorder must consider possible alternative explanations before concluding that non-compliance with medication

supports an adverse credibility inference."). Instead, the ALJ should have explained why the claimant's severe mental impairments did not call for corresponding limitations in the RFC. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir 1984). In particular, the ALJ should explain how the claimant's unchallenged evidence related to her problems with getting along with others (to the point she would lock another person in a trunk for offending her) and (unachieved) goal of "blowing up" at others fewer than three times a month, *see* Tr. 373, 393, translates to the ability to interact with co-workers and supervisors under routine supervision.

Furthermore, the ALJ chose to ignore other probative evidence as to the limiting nature of the claimant's mental impairments. For example, the claimant was assessed with low and/or borderline GAF scores throughout the course of her mental health treatment. "[A] GAF score between 41 and 50 indicates [s]erious symptoms (*e. g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (*e. g.*, no friends, inability to keep a job)." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004). "Although the GAF rating may indicate problems that do not necessarily relate to the ability to hold a job," *Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003), "[a] GAF score of fifty or less . . . *does* suggest an inability to keep a job." *Lee*, 117 Fed. Appx. at 678 [emphasis added], *citing Oslin*, 69 Fed. Appx. at 947. Instead of reciting only the consultative

examiner's assessed GAF of 85 and ignoring the ones assessed by her mental healthcare providers, the ALJ should at a minimum have discussed the claimant's multiple scores below (and above) 50 and explained why they were not due to any occupational factors. *See Simien v. Astrue*, 2007 WL 1847205 at *2 (10th Cir. June 28, 2007) ("The ALJ was tasked with determining the level of [claimant's] functioning within the six domains, yet he made no mention of [claimant's] GAF ratings. We agree . . . that he could not simply ignore this evidence."); *Givens v. Astrue*, 251 Fed. Appx. 561, 567 n.4 (10th Cir. 2007) (noting that "the Commissioner argues that a low GAF score may indicate problems that do not necessarily relate to the ability to hold a job[,]" but finding that "[e]ven assuming this is true, the ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors.").

Because the ALJ failed to properly analyze evidence of record as to the claimant's mental limitations, the Commissioner's decision must be reversed and the case remanded for further analysis by the ALJ. If such analysis results in adjustments to the claimant's RFC, the ALJ should re-determine what the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand

the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

   **DATED** this 10th day of September, 2015.

                _____
                **STEVEN P. SHREDER**
                **UNITED STATES MAGISTRATE JUDGE**